NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE:<br><br>MICROBILT CORPORATION, *et al.*,<br><br>Debtor, | Chapter 11<br>Case No. 11-18143 (MBK) |
| MICROBILT CORPORATION,<br><br>Appellant,<br><br>v.<br><br>MASELLI WARREN, P.C.,<br><br>Appellee. | On appeal from July 25, 2013 Order of Bankruptcy Court for the District of New Jersey<br><br>Civil Action No. 13-6323 (JAP) |
| MICROBILT CORPORATION,<br><br>Appellant,<br><br>v.<br><br>MASELLI WARREN, P.C.,<br><br>Appellee. | On appeal from November 12, 2013 Order of the Bankruptcy Court for the District of New Jersey<br><br>Civil Action No. 14-609 (JAP)<br><br>**OPINION** |

PISANO, District Judge

This matter comes before the Court on the appeal of MicroBilt Corporation ("MicroBilt") from the Order of the United States Bankruptcy Court, filed on July 23, 2013 and entered on July 25, 2013, granting in part the final fee application of Maselli Warren, P.C. ("MWPC"), special counsel, for Debtor.[1] MicroBilt also appeals from the Order of the United States Bankruptcy

[1] MicroBilt's Motion for Reconsideration of the Court's July 25, 2013 Order was denied in an Order filed on September 23, 2013.

Court, entered on November 12, 2013, granting MWPC's motion to compel payment of its allowed claim. For the reasons set forth below, the Bankruptcy Court's Orders are affirmed.

## I. Background and Procedural History

### A. Background and Procedural History

The background of this dispute has been set forth in detail before the Bankruptcy Court. Accordingly, the Court sets forth only those facts that are relevant to this appeal.[2]

MicroBilt is in the business of providing consumer identity data, information, and services to end users. It buys credit information from Chex Systems, Inc. ("Chex"), and then resells it to a number of end user industries within the alternative credit world. Chex and MicroBilt initially entered into a Resale Agreement in 2003. This agreement was terminated in 2009, and the parties thereafter eventually entered into a subsequent Information Resale Agreement ("Resale Agreement"), dated August 26, 2009.

In mid-2010, MicroBilt acquired the assets and liabilities of CL Verify, LLC and CL Verify Credit Solutions, LLC (the "CL Companies"). The CL Companies are also resellers who purchase information from Chex. There was a dispute between Chex and MicroBilt over whether Chex had notice of the merger and/or if the merger violated the Resale Agreement.

For almost a decade, MWPC represented MicroBilt in various litigation matters. MicroBilt hired MWPC in an attempt to obtain an injunction to prevent Chex from terminating the contract with MicroBilt. MWPC filed an order to show cause in state court, which was removed to federal court by Chex. Chex then brought suit against the CL Companies in a federal court in Florida over unpaid bills. MWPC was hired and admitted *pro hac vice* to file an answer and counterclaim.

---

[2] All facts in this background statement can be found in the Brief of Appellant, Brief of Appellee, and Reply Brief of Appellant, as well as the accompanying Record on Appeal ("R.").

On March 18, 2011, MicroBilt filed for Chapter 11 bankruptcy. Chex then filed a Motion to Compel MicroBilt to Assume or Reject its Resale Agreement on April 5, 2011. MicroBilt sought authorization to retain MWPC as special counsel to handle the contract assumption/rejection litigation. The Bankruptcy Court authorized the appointment of MWPC pursuant to 11 U.S.C. § 327(e) on April 28, 2011. A conflict between MWPC and MicroBilt arose, which resulted in MWPC's withdrawal as counsel. MicroBilt's bankruptcy counsel filed a motion to substitute counsel and, because the case was in the midst of discovery, a motion to extend discovery. The Bankruptcy Court granted these motions on August 15, 2011. The Bankruptcy Court, however, stated that it did "not think that the estate should have to bear the cost" for new counsel "coming up to speed," and that MWPC should rather bear that cost. It was agreed that when MWPC presented its fee application, this would be taken into account. R. 257-58.

On February 26, 2013, MWPC filed its final fee application, requesting compensation in the amount of $28,803.00 for services rendered and reimbursement of expenses totaling $183.64. The fee compensatory amount included a 10% discount. MicroBilt filed an objection to the application, arguing that the application should be denied in its entirety because "MWPC…withdrew from serving as special litigation counsel to MicroBilt…and provided no benefit to the Debtors' Estates." R. 128. Essentially, MicroBilt argued that the timing of MWPC's withdrawal cost MicroBilt substantial additional fees in educating new counsel on all aspects of the history of the parties and the case, including providing new counsel with documents and information that had already been provided to MWPC. MicroBilt asserted, therefore, that the post-petition fees associated with MWPC's work did not therefore benefit the estate in any way.

On July 25, 2013, the Bankruptcy Court entered an order granting MWPC's application in part, reducing their fees to $19,303.00 (the "Post-Petition Order"). On August 29, 2013, MicroBilt moved for reconsideration, on the basis that MWPC failed to serve MicroBilt with a Pre-Action Notice pursuant to New Jersey Court Rule ("N.J. Ct. R.") 1:20A-6. On September 23, 2013, the Bankruptcy Court filed an order denying the motion for reconsideration (the "Reconsideration Order").

At the time of the bankruptcy filing, MWPC held a pre-petition claim for unpaid legal fees in the amount of $54,516.29, for which MWPC filed a proof of claim ("POC") on June 2, 2011. *See* R. 159. When MicroBilt filed its statement of financial affairs on May 4, 2011, it listed the MWPC claim as undisputed. On June 22, 2012, MicroBilt amended its statement of financial affairs to dispute the amount of MWPC's POC in its entirety. On November 30, 2012, the Bankruptcy Court entered an order confirming MicroBilt's Fourth Amended Chapter 11 Plan of Reorganization (the "Plan"). The Plan provides that the allowed claims of all creditors are to be paid in full; however, MicroBilt omitted the MWPC's POC in the escrowed payments under the Plan. The Plan also stipulates that MicroBilt does not release any claims it may have against MWPC, and preserves MicroBilt's right to pursue a cause of action against MWPC and preserves its defenses to the MWPC claim.

Under D.N.J. LBR. 2007-1(a), and as stated in the Order, MicroBilt had sixty (60) days to file an objection to the allowance of any claims. It is undisputed that MicroBilt failed to file a timely objection to MWPC's claim. On January 25, 2013, MicroBilt filed a certification stating that it had made all payments to pre-petition secured and unsecured creditors. On July 16, 2013, MWPC moved to compel payment of its pre-petition claim, asserting that MicroBilt had not paid MWPC's POC, despite certifying in January that it had made all payments to pre-petition claims.

MicroBilt objected to this motion, arguing that MWPC failed to serve MicroBilt with a Pre-Action Notice pursuant to N.J. Ct. R. 1:20A-6 and therefore the "Fee Action must be dismissed and the underlying proof of claim stricken as an unperfected nullity." R. 169-70. MicroBilt alternatively argued that it should not be liable for the claim because of MWPC's "abandonment" of MicroBilt. *Id.* at 174-75.

On October 31, 2013, the Court issued an opinion granting MWPC's motion to compel payment of its allowed claim for pre-petition attorney's fees in its entirety (the "Pre-Petition Opinion"). The Court entered its order directing MicroBilt to pay the claim for pre-petition attorney's fees on November 11, 2013 (the "Pre-Petition Order").

**B. Rulings of the Bankruptcy Court**

1. *The Post-Petition Attorney Fee Application Order*

The Bankruptcy Court held oral argument on the contested final fee application that was submitted by MWPC on July 22, 2013. While MWPC had acknowledged a $724.00 voluntary reduction for one of the expenses, it had argued that the time and effort expanded by MicroBilt's new counsel amounted to about $3,700.00. Accordingly, MWPC asserted that its fee application should be reduced by approximately that amount. MicroBilt argued that MWPC's estimate of how much time its new counsel had expended "coming up to speed" did not reflect the realities of the actual time spent. MicroBilt's counsel asserted that it took more than the ten hours that MWPC had argued for to learn the case, and that its bankruptcy counsel also had to take time to learn the litigation side of the case in order to assist them. MicroBilt's counsel argued that its time records do not properly represent the extent of how much work it had to do to learn the case.

The Bankruptcy Court stated that, even though MWPC did withdrawal, MWPC's work did provide a value to the estate, and the estate would have had to pay an attorney for such work regardless. *See* R. 308. Therefore, the Bankruptcy Court, after considering both the oral argument and the written submissions, including the individual time entries, found "that the bulk of the entries are for work that would have been undertaken in order to represent the interests of the debtor no matter whether it was [MWPC] doing the work or [new counsel for MicroBilt]. There has been a true benefit in having the work done." R. 313. The Bankruptcy Court emphasized that there had been no objection that the work was somehow negligently or improperly done, or that the work was unnecessary. Noting that "[i]t's not so easy to make that decision [of if work is unnecessary] at the time the work is undertaken, and this court affords the latitude to counsel in that regard. Certainly the client, which is here, the debtor estate, benefited from having those tasks completed." *Id.* The Bankruptcy Court, however, found that there were some reductions that could appropriately be taken from the fee application, because the debtor estate "should not have to bear the brunt of new counsel having to come up to speed." *Id.* The Bankruptcy Court disagreed with MWPC's conclusion that only approximately $3,700.00 should be deducted from the fee application; rather, the Bankruptcy Court "looked at the various time entries and found that [it] could ascribe greater time to certain entries than was credited by [MWPC], and [it] also agree[d] with [MicroBilt's counsel] that there's obviously time and effort that's not always reflected in the time sheet." *Id.* The Bankruptcy Court concluded the fee application for MWPC would be granted, but less the sum of $9,500.00. The Bankruptcy Court found that a reduction of $9,500.00 was necessary based upon an exclusion of time billed by MWPC that occurred before April 28 or after August 8, as well as the $742.00 that MWPC withdrew on its own, a reduction of $4,155.00, and the time that the Bankruptcy Court had

ascribed going through the time sheets as necessary for new counsel for MicroBilt to "come up to speed." *Id.* This was in addition to the 10% reduction that MWPC had already given to MicroBilt.

On August 29, 2013, MicroBilt moved for reconsideration, on the basis that MWPC failed to serve MicroBilt with a Pre-Action Notice pursuant to N.J. Ct. R. 1:20A-6. MWPC opposed, arguing that the fact it did not serve such a notice to MicroBilt could not be considered "new evidence." The Bankruptcy Court agreed with MWPC, and denied the motion for reconsideration on September 23, 2013.

2. *The Pre-Petition Opinion and Order*

As discussed, the Bankruptcy Court issued an opinion on October 31, 2013, granting MWPC's motion to compel payment of its claim for pre-petition attorney's fee. First, the Court determined that, while it recognized that MicroBilt had failed to file an objection to the MWPC POC and was "cognizant of MWPC's contention that MicroBilt's untimely objection precludes any opposition to the within Motion," it would "address this matter on the merits, rather than ruling on procedural niceties . . . ." R. 239 (citing *In re Alcon Demolition*, 204 B.R. 440, 445 (Bankr. D.N.J. 1997)).

Next, the Court turned to the issue of whether the claims allowance scheme incorporated within the Bankruptcy Code preempts N.J. Ct. R. 1:20A-6, a New Jersey Court rule of procedure that requires attorneys to provide clients with pre-action notice and to alert them of their right to pursue arbitration before initiating an action to recover fees. The Court held that the Bankruptcy Code (the "Code") and the Federal Rules of Bankruptcy Procedure (the "Rules") preempted the New Jersey Court rule. The Court relied on a recent Third Circuit decision, *Simon v. FIA Card Servs.*, 732 F.3d 259 (3d Cir. 2013), in which the Third Circuit found that, where there is a direct

conflict between the Fair Debt Collection Practices Act ("FDCPA") and the Bankruptcy Code or Rules, the FDCPA claim would be preempted. The Bankruptcy Court compared that situation to the one in front of them, explaining that there was a direct conflict between the New Jersey Court rule and the Code and the Rules because, "had MWPC issued a pre-action notice, it would have violated the automatic stay." R. 241-42. Therefore, the Court concluded that MWPC's failure to serve the Pre-Action Notice did not preclude the allowance of the MWPC POC under 11 U.S.C. § 502, and granted MWPC's motion. On November 12, 2013, the Order was entered.

On October 24, 2013, MicroBilt filed an appeal from the Post-Petition Order. On February 21, 2014, this Court entered an Order consolidating the appeal from the Post-Petition Order with MicroBilt's appeal from the Bankruptcy Court's Pre-Petition Order (together, the "Fee Orders").

## II. Jurisdiction and Standard of Review

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1). Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In bankruptcy cases, the district court serves an appellate function. Thus, the Court reviews findings of fact under a clearly erroneous standard and reviews legal conclusions under a *de novo* standard. Fed. R. Bankr. P. 8013; *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1223 (3d Cir. 1989). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be

given to the opportunity of the bankruptcy court to judge the credibility of the witness." Fed. R. Bankr. P. 8013.

For determinations that involve mixed questions of law and fact, a district court must apply a mixed standard of review. *Mellon Bank, N.A. v. Metro Commc'n, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991). The Court must accept the Bankruptcy Court's findings of historical or narrative facts unless clearly erroneous, but exercise "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981). Additionally, the Bankruptcy Court's exercises of discretion are reviewed for abuse thereof. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002).

## III. Discussion

MicroBilt has appealed both the Pre- and Post-Petition Orders. First, MicroBilt argues that both Fee Orders should be vacated, because the Bankruptcy Court erred in holding that N.J. Ct. R. 1:20A-6 was preempted by the Code and the Rules. Next, MicroBilt appeals from the Bankruptcy Court's fee determination, arguing that it is clearly erroneous.

### A. The Preemption Issue

In its appeal, MicroBilt argues that the Bankruptcy Court erred in its finding that the Code and the Rules preempt the application of N.J. Ct. R. 1:20A-6. Instead, MicroBilt asserts that the service of a Pre-Action Notice under N.J. Ct. R. 1:20A-6 was mandatory here, and MWPC's failure to serve such notice is fatal to both its claims for fees. MWPC argues, however, that it could not have filed a pre-action arbitration notice pursuant to N.J. Ct. R. 1:20A-6 without violating the automatic stay pursuant to 11 U.S.C. § 362(a).

Therefore, this Court must review, *de novo*, if the claims allowance scheme within the Bankruptcy Code preempts the New Jersey Court rule that requires attorneys to provide notice to a client before initializing an action to recover fees. Specifically, under N.J. Ct. R. 1:20A-6:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-Action Notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. . . . The notice shall specifically advise the client of the right to request fee arbitration and that the client should immediately call the secretary to request appropriate forms; the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

N.J. Ct. R. 1:20A-6.

Recently, the Third Circuit discussed the proper inquiry for determining if Code or the Rules preclude a claim under the Fair Debt Collection Practices Act (the "FDCPA"). In *Simon*, which the Bankruptcy Court relied on in making its decision, the debtor sought to bring various claims for violations of the FDCPA, including the failure to include the "mini-Miranda" warning required under 15 U.S.C.§ 1692e. *See* 732 F.3d at 263-64. Section 1692e mandates that a debt collector must disclose in the initial communication with the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). The District Court dismissed the action in its entirety, holding that the FDCPA claims were precluded by the Bankruptcy Code. *See Simon v. FIA Card Servs., N.A.*, Civil Action No. 12-0518, 2012 U.S. Dist. LEXIS 98225, at * 8 (D.N.J. July 16, 2012). The Third Circuit reversed in part, finding that there should not be a blanket preclusion of all FDCPA claims. Rather, they held:

> When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical

> preclusion of the FDCPA claims. When, as is also the case here, the FDCPA claim arises from communications sent in a pending bankruptcy proceeding and there is no allegation that the communications violate the Code or Rules, there is even less reason for categorical preclusion. **The proper inquiry for both circumstances is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced**.

*Simon*, 732 F.3d at 274 (emphasis added). Therefore, the Third Circuit found that preclusion of FDCPA claims was necessary where there was a direct conflict between the Bankruptcy Code. Consequently, the Third Circuit found that the plaintiffs' FDCPA claim premised on a violation of § 1692e(11) must be dismissed, emphasizing that there was an actual conflict involved if both statutes were enforced: "If…a § 1692e(11) claim could arise from the fact that the [firm's] letters and subpoenas did not include the 'mini-Miranda' notice, the firm would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice." *Id.* at 280.

The Court finds that *Simon* is persuasive authority for finding that N.J. Ct. R. 1:20A-6 is preempted by the Code and Rules. While *Simon* discusses the relationship between the Code and the FDCPA, the rationale of the case is directly applicable here. In *Smith*, the existence of a direct conflict between the automatic stay provision of the Code, 11 U.S.C. § 362(a), and a violation of the FDCPA requirement of sending a "mini-Miranda" notice, *see* 15 U.S.C. § 1692(e)11, precluded the FDCPA claim from proceeding. Likewise, here, the statutory requirements under N.J. Ct. R. 1:20A-6 directly conflict with the automatic stay provision of the Code: if MWPC had issued a Pre-Action Notice, it would have violated the automatic stay provision of the Code.[3] Complying with both the Code and the New Jersey Court rule is

---

[3] This conflict has been noted by other courts in this District. *See In re Rapid Freight Sys., Inc.*, Civil Action No. 09-34047, 2011 WL 1300441, at * 6 (Bankr. D.N.J. Mar. 31, 2011) ("If [the attorney] were to have taken the steps necessary to perfect its statutory lien during the pendency of the Debtor's bankruptcy, (i.e. filing a petition or complaint in pending state court forum) then [the attorney] would have done so in violation of the automatic stay currently in effect.").

impossible; in such cases where there is a direct conflict between the Code or Rules and a New Jersey Court rule, both cannot be enforced. *See, e.g.*, *Simon*, 732 F.3d at 274.[4] Consequently, this conflict preempts enforcing N.J. Ct. R. 1:20A-6 against MWPC for failing to send a pre-action notice.

Further, as recognized in *Smith*, the Code is a complex, detailed, comprehensive, and lengthy system "designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *Id.* at 272 (quoting *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002)). The claims allowance process is part of the core proceedings of the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2)(B). The Code contains an extensive, detailed scheme for claim allowance, which is part of the core proceedings of the bankruptcy court. *See* 28 U.S.C. § 157; *see also In re McCarther-Morgan*, Civil No. 08-1093, 2009 WL 7810817, at *4 (B.A.P. 9th Cir. Jan. 27, 2009) ("The Bankruptcy Code and the rules promulgated thereunder specify comprehensive and detailed procedures for filing and consideration of creditors' claims and resolution of disputes over claims, which are core functions of the bankruptcy system."). For example, a proof of claim filed in a bankruptcy proceeding constitutes *prima facie* evidence of its validity and is deemed allowed unless and until a party in interest objects to it. § 502(a); Rule 3001(f). Thereafter, if an objection is filed, the bankruptcy court resolves that objection after notice and a hearing. *See* Rule 3007. The Code has established how a party in interest can object to a claim – specifically, the objecting party must "produce evidence sufficient to negate the *prima facie* validity of the filed claim," a standard which, in practice, means the objector must produce evidence which "would refute at least one of the allegations that is essential to the

[4] It should also be noted that *Simon* involved the preclusion of the FDCPA, a federal statute. As the Third Circuit explained, "In contrast to its consistently strict application of the presumption against finding an implied repeal of one federal statute by another, the Supreme Court has shown a greater willingness to find that federal statutes and regulations preempt state-law causes of action." *Simon*, 732 F.3d at 274.

claim's legal sufficiency." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). Here, to find more generally that a party in interest could object to a claim based on a failure to serve a pre-action notice on the Debtor is irreconcilable with the claims objection process contemplated under the Code.

MicroBilt has emphasized that cases in this District have mandated that adherence to N.J. Ct. R 1:20A-6 is necessary. These decisions are largely inapplicable in this context because they deal with perfecting an attorney's lien. For example, MicroBilt cites to *In re Rapid Freight Sys., Inc.*, Civil Action No. 09-34047, 2011 WL 1300441 (Bankr. D.N.J. Mar. 31, 2011), a case in which the bankruptcy court was asked to determine if an attorney held a valid attorney's lien securing pre-petition fees, including fees in connection with matters that were active and pending at the time of the bankruptcy filing. The Bankruptcy Court determined that perfection prerequisites under the relevant state law are necessary to uphold the validity of an attorney's lien, even if there is no fee dispute. The Bankruptcy Court concluded that, because the attorney sought "payment from the assets of the Debtor's estate, it was bound by the requirements of R. 1:20A-6 and pre-action notice" in order to uphold the validity of the attorney lien. *See id.* at * 8.

Implicated in the *Rapid Freight* decision is the well-settled premise that property interests are created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). A lien is a property right, *see In re Pennsylvania Central Brewing Co.*, 135 F.2d 60, 63 (3d Cir.1943); accordingly, state law dictates whether or not an attorney properly perfected a lien against the property of the debtor's estate. Here, it is undisputed that MWPC did not perfect its attorney's lien; however, MWPC has asserted that it is not seeking an attorney's lien, but is rather only seeking to be treated as a general unsecured creditor. *See* R. 323; Appellee Br. at 5 n.2. In the bankruptcy setting, the issue of whether or not a lien has been perfected still leaves an attorney

with a general unsecured claim that could be prosecuted in the bankruptcy case. In fact, in *Rapid Freight*, the Bankruptcy Court noted the validity of such an unsecured claim: "The result may seem harsh to [the attorneys], however, they are not left wholly without remedy or redress. They will still have a general unsecured claim for alleged amounts owed based upon pre-petition services provided to Debtor in connection with the state court collection matters." *Rapid Freight*, 2011 WL 1300441, at *7; *see also Hoffman & Schreiber v. Medina*, 224 B.R. 556, 564 (D.N.J. 1998) (affirming the bankruptcy court's conclusion that, because the attorney failed to perfect its lien under New Jersey state law, the attorney's "entire claim against debtor is in the nature of an unsecured claim"). The failure to perfect a lien does not result in the dismissal of the claim outright, leaving the attorney with no redress. Therefore, assuming that the New Jersey Court rule was not preempted by the Code and Rules, MWPC would remain in the same position it is currently in: as a creditor with an unsecured claim.

Finally, MicroBilt argues that *Kelley Drye & Warren v. Murray Indust., Inc.*, 623 F. Supp. 522 (D.N.J. 1985) is the "correct and dispositive authority." Br. at 15. The Court disagrees. In *Kelley Drye & Warren*, the Court was faced with a similar issue. The defendant had moved to dismiss the complaint or, alternatively, stay all proceedings because they had never received a fee arbitration notice. The Court agreed, entering an order requiring the attorneys to proceed with arbitration of its claim pursuant to N.J. Ct. R. 1:20A-1, *et seq.*, and administratively terminating the action. While superficially relevant, this decision is not persuasive. The *Kelley Drye & Warren* case was in federal court because of diversity jurisdiction; as such the Court had to apply the substantive law of New Jersey to the matter at hand. Because the substantive law of New Jersey "conditions the right to practice in New Jersey upon an undertaking to resolve attorneys' fee disputes through arbitration as provided in the Rules of Court," the Court was

obligated to require the attorneys to proceed with arbitration of its claim. *Kelley Drye & Warren*, 523 F. Supp. at 526. On the other hand, this case arrives in this Court because of the Bankruptcy Code, which creates substantive federal jurisdiction. The involvement of the Bankruptcy Code, with its protections for the Debtor under the automatic stay and its detailed scheme for claims allowance, makes the *Kelley Drye & Warren* decision almost inapposite.

Overall, attempting to reconcile the procedure under N.J. Ct. R. 1:20A-6 with the claims objection process or automatic stay protections under the Code results in the sort of confusion and conflict that persuades the Court that N.J. Ct. R 1:20A-6 should be preempted in the context of bankruptcy cases. The Fee Orders will not, therefore, be vacated on this ground.[5] Accordingly, the Court will affirm the Bankruptcy Court's holding that the Code and Rules preempt application of N.J. Ct. R. 1:20A-6.

---

[5] MicroBilt also argues, in passing, that the Pre-Petition Order granting MWPC's allowed claim in its entirety should be vacated and remanded because the Bankruptcy Court failed to make any factual findings as to any reductions. It asserts that the Bankruptcy Court commented that it was addressing the "matter" on the merits but only addressed the procedural issue of complying with N.J. Ct. R. 1:20A-6, rather than its argument regarding the substantive claim. The Bankruptcy Court's Memorandum Opinion is clear on its intent to address a single issue in regards to the motion to compel; specifically, it was making a determination on whether the claim is completely barred because MWPC failed to serve MicroBilt with a pre-action notice as required under the New Jersey Court rule. *See* R. 239, 241. If MWPC was under no such requirement to serve the notice, then the allowed claim was to be entered in its entirety. *See* R. 243. Therefore, the Bankruptcy Court, finding that the Code and Rules preempt N.J. Ct. R. 1:20A-6, granted MWPC's motion to compel in its entirety. The Court disagrees that the Bankruptcy Court must make a ruling on the substantive allowed claim once it determined that N.J. Ct. R. 1:20A-6 did not present a procedural barrier to entering the allowed claim.

The Court is also unconvinced as to how MWPC's withdrawal as special counsel for MicroBilt in the post-petition period affects MWPC's pre-petition claim for unpaid legal fees, particularly when considering that any effect of the alleged "abandonment" of MicroBilt by MWPC was accounted for by the Bankruptcy Court when MWPC filed its post-petition fee application. Considering there was no factual evidence provided to the Bankruptcy Court regarding how the withdrawal of MWPC as counsel affected the pre-petition claim, there is no way that this Court can find that the Bankruptcy Court's decision to enter the allowed claim in its entirety was erroneous. Therefore, the Court finds that, even if it disagreed with the Bankruptcy Court, vacating and remanding the Pre-Petition Order on this basis would be both futile and a waste of judicial resources.

**B. The Post-Petition Fee Application**

MicroBilt has also appealed the Bankruptcy Court's Post-Petition Fee, arguing that the post-petition fee application order should be vacated for two reasons. First, it argues that the Bankruptcy Court's factual findings were clearly erroneous because it failed to consider or appropriately weigh the attorneys' fees and lost executive time that MWPC's "untimely abandonment" caused MicroBilt. Second, it argues that MWPC failed to follow the procedural requirements of the Bankruptcy Court's Order on Professional Services entered on July 6, 2011. The Court finds these arguments meritless.

"Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award on findings of fact that are clearly erroneous.'" *Ryker v. Current*, 338 B.R. 642, 651 (D.N.J. 2006) (quoting *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.*, 50 F.3d 253, 258 (3d Cir.1995) (quoting *Electro–Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir.1994))). The fact that this Court may have reached a different conclusion does not mean that the Bankruptcy Court abused its discretion. *See United Telegraph Workers, AFL-CIO v. Western Union Corp.*, 771 F.2d 699, 703 (3d Cir.1985) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

The Court disagrees with MicroBilt's assertion that the Bankruptcy Court's fee award was based on clearly erroneous findings of fact. A review of the Bankruptcy Court's hearing on the post-petition application shows that the decision was well-reasoned and thoughtful. The Bankruptcy Court considered all the issues raised by MicroBilt, including the cost that MWPC's withdrawal cost MicroBilt in terms of attorneys' fees and lost executive time, as well as MicroBilt's argument that MWPC's work provided no benefit to the estate. *See supra* Part

II.B.1. The Bankruptcy Court clearly states that it carefully reviewed the time sheets and found that it could credit greater time to certain entries by MicroBilt than MWPC argued for, and that it considered in its determination the time that would not be reflected in time sheets, such as time expended by various executives. *See* R. 313. The Bankruptcy Court also found that the "bulk of the entries are for work that would have been undertaken in order to represent the interest of the debtor" whether it was MWPC doing the work or MicroBilt's new counsel. R. 313; *see also* R. 307. The Bankruptcy Court found that there was "a true benefit in having the work done" and that "the client, which is here, the debtor estate, benefited from having those tasks completed." *Id.* The Bankruptcy Court also noted that there was no objection that the work that was done was unreasonable, unnecessary, or negligently or improperly done. *See id.* at 313. The Bankruptcy Court acknowledged and considered the same factual arguments that MicroBilt raises here on appeal, and made its conclusions with a solid background of the ongoing litigation. Accordingly, the Court does not find that the Bankruptcy Court's award of fees to MWPC was based on findings of fact that were clearly erroneous.

Second, MicroBilt argues that the Bankruptcy Court abused its discretion in the post-petition fee award by failing to recognize that MWPC did not follow the procedural requirements of the Bankruptcy Court's Order on Professional Services entered on July 6, 2011. The Court disagrees. The Professional Services Order provides a permissive method by which professionals could proceed to have their fees approved in order to be paid on a monthly interim basis. *See* R. 2 ("[A]ll professionals retained in this case **may** seek monthly compensation in accordance with the following procedures . . . .") (emphasis added). MWPC's decision to not seek monthly compensation, but to rather file a first and final application for approval of its post-petition fees, was completely within its rights. Further, and more practically, the Court can

detect no prejudice that was done to any of the interested parties by the filing of a final fee application rather than a monthly fee statement; the interested parties could object to the final application, and indeed one did. To find otherwise would be exalting form over substance. Therefore, the Court finds that the Bankruptcy Court did not abuse its discretion when it entered a post-petition fee award for MWPC, even though MWPC chose not to follow the Professional Services Order.

## IV. Conclusion

For the foregoing reasons, the Bankruptcy Court's Order granting MWPC's motion to compel payment of its allowed claim in its entirety is AFFIRMED. The Bankruptcy Court's Order granting in part the final fee application of MWPC is likewise AFFIRMED. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Date: June 16, 2014